UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| Andres R. Sosa,<br>*Plaintiff,*<br><br>v.<br><br>Theresa Lantz,<br>*Defendant.* | Civil No. 3:09cv869 (JBA)<br><br><br><br>September 30, 2010 |
|---|---|

RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. # 15]

Plaintiff Andres R. Sosa filed this action *pro se* under 42 U.S.C. § 1983 (2000). The Court's Initial Review Order dismissed all claims[1] except his claims against Defendant Theresa Lantz alleging violation of Plaintiffs' First, Eighth, and Fourteenth Amendment rights as a result of double–celling, prison overcrowding, retaliatory transfer and imposition of religious preferences. Defendant has moved to dismiss these remaining claims against her. For the reasons that follow, the motion to dismiss will be granted in part and denied in part.

I.  Factual Background

Plaintiff, incarcerated at MacDougall–Walker Correctional Institution ("MacDougall") in Suffield, Connecticut, and later transferred to Garner Correctional Institution ("Garner") in Newtown, Connecticut, alleges that he has been forced to live with a cellmate, or "double–celled," in a fifty–seven square foot prison cell for more than ten years. (Compl. [Doc. # 1] at 7.) According to Sosa, inmates at MacDougall and Garner are paired with cellmates without regard to

---

[1] The Court dismissed all claims against Defendants Governor Rell and Senate Judiciary Chairman McDonald and all claims brought pursuant to 5 U.S.C. §§ 701 and 706; 18 U.S.C. §§ 3006A, 3626, 4042 and 4081; 28 U.S.C. §§ 1331, 1331(A), 1342, 1342(A)(3), 1343, 1343(3), 1343(a)(3), 1915(d) and 1988; and 42 U.S.C. §§ 1985, 1986, 1988, 1997(a)–(c), 1997 *et seq.*, 2000bb and 2000h.

psychological problems, gang affiliation, or crimes. Some inmates are housed in single cells, and others are double–celled in larger cells than the one assigned to Plaintiff. (*Id.* at 11–12.) Prison facilities are overcrowded, resulting in fewer job, educational, and rehabilitative opportunities. (*Id.* at 17.) Plaintiff wrote to Defendant Lantz regarding these conditions at MacDougall, and Deputy Commissioner Brian K. Murphy responded to Plaintiff's letter, referring Plaintiff to the Program and Treatment Division. (*Id.* at 83–86.)

Plaintiff also claims that the overcrowding at MacDougall resulted in inmates being denied the required 2700 calories per day and receiving inadequate medical care. (*Id.* at 17.) One doctor serves the 600 inmates in the expansion units in which Plaintiff was celled on Sunday, and works in the other part of the prison from Monday through Friday. (*Id.*) Plaintiff also states that correctional staffing in these units is minimal with only one guard at night. (*Id.* at 17–18.)

Sosa alleges that he first requested a single cell in November 2001, and again in October 2002 and November 2007; each of these requests was denied. (*Id.* at 6–7.) In November 2007, he was evaluated by Dr. Coleman in response to his second request for a single cell. (*Id.*) Plaintiff told Dr. Coleman that he could not live with rapists, child molesters, or "dirty people"; was stressed by having to live in close quarters with another inmate; and thought he would kill his cellmate if he was not assigned a single cell. (*Id.*) Despite these statements, Dr. Coleman determined that Plaintiff was not a psychopath or psychotic and instead opined that Plaintiff was attempting to use mental health claims to obtain what he wanted. (*Id.*) The request for single cell status was denied. (*Id.*) Plaintiff's grievance on the issue was denied, and District Administrator Choinski denied his appeal. (*Id.*)

Plaintiff has been required to share a cell with a Muslim inmate. He claims that the Muslim inmate's prayers five times per day in the small cell has the effect of forcing him to participate in and support the Muslim religion. (*Id.* at 22.) Plaintiff argues that he is also subjected to unsanitary

2

conditions because his Muslim cellmate keeps a cup and washcloth in the cell, which he uses to wash his penis and buttocks after using the toilet. (*Id.* at 26.)

Plaintiff also alleges that the he and his cellmate must fight over the one chair in the cell and if contraband is found in the cell, both inmates automatically receive disciplinary reports. (*Id.* at 29–30.) For instance, when prison officials found a razor in Plaintiff's cell on August 14, 2007, they forced him to spend one day in administrative segregation even though his cellmate took responsibility for the razor. (*Id.*)

Plaintiff alleges that on November 15, 2008, he filed a grievance about the lack of rehabilitative programs at MacDougall. (*Id.* at 37.) The appeal of the denial of the grievance was denied as moot because Plaintiff had been transferred to Garner. (*Id.*) Plaintiff alleges that "custody" transferred him in retaliation for his complaints. (*Id.*)

II. Standard of Review

When considering a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 237 (2d Cir. 2003). The Court does not consider whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *See York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

Under the Supreme Court's holding in *Ashcroft v. Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" and cannot rely simply on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The extent to which *Iqbal* applies to a complaint filed by a *pro se* plaintiff is unclear,

3

however, particularly as *pro se* complaints are held to a less stringent pleading standard than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations omitted). In liberally construing the allegations of *pro se* complaint, the Court will dismiss "a *pro se* claim as insufficiently pleaded . . . only in the most unsustainable of cases," and where the *pro se* complaint "on its face presents a plausible allegation" the Court will reserve evaluation of the merits for summary judgment. *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008).

III. Discussion

The remaining claims in this case are for violation of Plaintiffs' First, Eighth, and Fourteenth Amendment rights arising from prison overcrowding and double–celling, retaliatory transfer, and imposition of religious practices. Plaintiff seeks injunctive and declaratory as well as compensatory, punitive, and nominal damages. Defendant Lantz moves to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a cognizable claim.

    A.    Official Capacity Claims for Monetary Damages

Defendant first argues that the Court lacks subject matter jurisdiction over any claims against her for damages in her official capacity as these claims are barred by the Eleventh Amendment.

The Eleventh Amendment bars suits in federal court against a state or state agency absent the state's unequivocal consent to suit. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A suit against a state official in her official capacity is considered a suit against the State for Eleventh Amendment purposes. *Hafer v. Malo*, 502 U.S. 21, 25 (1991). Thus, all claims for damages against Defendant in her official capacity are barred by the Eleventh Amendment.

In response, Plaintiff argues that the Court retains diversity jurisdiction over these claims. He argues that the parties are diverse because he is a "Resident of the state of New York City, Florida and the Dominican Republic before and since being imprisoned Plaintiff [has] no family or friends in this state."

However, Plaintiff did not indicate anywhere in the 89–page complaint that he is bringing a diversity action. Instead, in his jurisdictional statement, Plaintiff specifically references 28 U.S.C. §§ 1331 and 1343, statutes providing federal question jurisdiction. (Compl. at 3.) Plaintiff cannot amend his complaint through a memorandum. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (declining to address merits of claim that "does not appear anywhere in the amended complaint and did not enter the case until [the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss").

Further, even if Plaintiff claimed diversity jurisdiction, "neither pendent jurisdiction nor any other basis for jurisdiction may override the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121. Thus, Defendant's motion to dismiss is granted as to the official capacity damages claims.

B.     Claims for Equitable Relief

Defendant next seeks dismissal of the claims for equitable relief against her in her official capacity, arguing that they are moot because Plaintiff no longer is confined at MacDougall.

Although the Eleventh Amendment does not preclude claims for prospective injunctive relief, *see Edelman v. Jordan*, 415 U.S. 651, 667–68 (1974), the Second Circuit has held that an inmate's request for declaratory and injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution. *See Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d

5

Cir. 1976). *See also Martin–Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed").

There is an exception to this principle, however. The court may decide a claim that is currently moot where the claim is "'capable of repetition, yet evading review'" and the repetition will affect "the same complaining party." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 71 (2d Cir.) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)), *cert. denied sub nom. Debari v. Bedford Cent. Sch. Dist.*, 534 U.S. 837 (2001).

In response to Defendant's motion to dismiss, Plaintiff argues that he has thirty years remaining on his sentence and likely will be returned to MacDougall at some point. Plaintiff's claims concern specific conditions resulting from overcrowding at MacDougall before January 2009, however, it is far from mere speculation to assume that his double–celling and the nutritional, medical, safety, and vocational consequences of prison overcrowding may continue into the future. The Court therefore considers the claims regarding double–celling and overcrowding as capable of repetition yet evading review; Defendant's Motion to Dismiss is denied as to the request for equitable relief on those claims.

### C. Failure to State a Cognizable Claim

Defendant contends that Plaintiff fails to state cognizable claims against him for two reasons. First, she contends that damages against her in her individual capacity are not warranted because Plaintiff has not alleged that she was personally involved in the claims of double–celling and overcrowding. Second, she argues that these claims do not have a plausible basis in the law.

6

1. Personal Involvement

To recover money damages under § 1983, Plaintiff must show that Defendant was personally involved in the constitutional violation. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Defendant Commissioner Lantz, as a supervisory official, cannot be held liable under § 1983 solely for the acts of her subordinates; her conduct itself must be unconstitutional. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

Plaintiff may show supervisory liability by demonstrating any of the following criteria: (1) Defendant actually and directly participated in the alleged acts; (2) Defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) Defendant created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) Defendant was grossly negligent in his supervision of the correctional officers who committed the constitutional violation; and (5) Defendant failed to act in response to information that unconstitutional acts were occurring. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). In addition, Plaintiff must establish an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Plaintiff alleges that "custody" transferred him to Garner. (Compl. at 36.) He does not allege that Defendant Lantz knew about or ordered his transfer. His memorandum fleshes out this knowledge element by stating that once a year, Defendant Lantz reviews one grievance or grievance appeal from each inmate, thereby making her aware of all of his grievances. (Pl.'s Mem. [Doc. # 26] at 18.) Plaintiff also alleges that, in October 2008, he wrote a letter to Defendant regarding overcrowding at MacDougall and the resulting denial of rehabilitation programs and job opportunities. Deputy Commissioner Murphy responded to the letter and referred Plaintiff to the

Program and Treatment Division. (Compl. at 83–86.) Although a supervisory official's referral of a prisoner's letter of protest to other officials for response does not establish that supervisory official's requisite personal involvement, *see Brooks v. Chappius*, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006), the Second Circuit has emphasized the importance in providing *pro se* incarcerated plaintiffs with an opportunity to conduct discovery to identify the officials "who have personal liability." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998). Plaintiff is accordingly entitled to some discovery on the issue of Defendant's knowledge or role related to the conditions of Plaintiff's confinement or the alleged retaliatory transfer.[2]

Defendant's Motion to Dismiss on the ground of lack of personal involvement will therefore be denied.

### 2. Prison Overcrowding and Double–Celling

Plaintiff argues that his constitutional rights have been violated by the overcrowded conditions at MacDougall, which have resulted in his having to share a fifty–seven square foot cell despite his requests to be moved to a single cell and mental health claims; fewer job, educational, and rehabilitative opportunities; and inadequate nutritional and medical care. Defendant moves to dismiss this claim, arguing that cell size is not constitutionally mandated and that Plaintiff failed to properly allege that he suffered harm from the overcrowded conditions.[3]

---

[2] Defendant's only argument in support of her Motion to Dismiss with respect to the retaliatory transfer claim is that Plaintiff did not properly allege her "personal involvement" in the transfer. (*See* Mem. Supp. [Doc. # 15–1] at 11–12.) Pursuant to the discussion above, Defendant's Motion to Dismiss with respect to that claim will therefore be denied without prejudice to renew on a more fully developed record at summary judgment.

[3] Although Defendant attempts to parse Plaintiff's claims regarding the conditions of his confinement, the proper approach to these claims is one of holism wherein the Court will evaluate whether, taken together, the complained–of conditions as a result of overcrowding state a plausible Eighth Amendment claim. *See Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981)

Although Plaintiff has no constitutionally protected right to be housed in a single cell or in a cell of any particular size, Plaintiff's conditions of confinement must meet "minimal civilized measure of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes*, 452 U.S. at 348–49, i.e. "adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979). Double–celling is not *per se* unconstitutional, and only where the overcrowded conditions result in deprivations of essential food, medical care, or sanitation, increased violence among inmates, or diminished job and educational opportunities has a plaintiff been subject to cruel and unusual punishment in violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 348.

Given the less stringent standard to which the Court holds *pro se* complaints, Plaintiff has adequately stated a claim that his Eighth Amendment rights have been violated as a result of the overcrowded conditions at MacDougall. Plaintiff's claim does not rest solely on the size and double–occupancy of his cell, but includes double–celling as one of the consequences of overcrowding, along with his claims that inmates receive inadequate nutrition and medical care because the size of the prison population has "overtaxed" the feeding facility and medical services. Plaintiff further argues that the double–celling has resulted in unsanitary conditions because of his cellmate's cleansing routine in their small quarters and remains in–force despite his potentially violent psychological problems. In addition, he claims that "job and education opportunities have diminished" as a result of overcrowding and that his religious freedom has been invaded by being forced to share a cell with a practicing Muslim. Some or all of these conditions, if successfully

---

("Conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities."); *see also Smith v. Fairman*, 690 F.2d 122, 125 (7th Cir. 1982) ("[W]e must decide whether the prisoners' proof, considered as a whole, is sufficient to establish a violation of the eighth amendment.").

9

proved by Plaintiff, could reflect a deprivation of a life's necessities. *Wilson*, 501 U.S. at 298; *Wolfish*, 573 F.2d at 125.

Despite Defendant's argument that "[P]laintiff must establish not only that the prison was overcrowded, but that the overcrowding led to intolerable conditions such as the deprivation of essential food, medical care, sanitation, or to an increase of violence," now is not the time to vet Plaintiff's evidence of overcrowded and harmful conditions. *See Boykin*, 521 F.3d at 216. The complaint presents a plausible allegation for violation of Plaintiff's Eighth Amendment rights as the result of double–celling and overcrowding, and Plaintiff is accordingly entitled to discovery to allow him to develop evidence on this claim. Defendant's Motion to Dismiss will therefore be denied with respect to Plaintiff's Eighth Amendment conditions of confinement claims.

Plaintiff also argues that he has been denied equal protection of the law in violation of the Fourteenth Amendment because not all inmates are forced to share a cell, and some shared cells are twice as large as the cells to which he has been assigned. Defendant has not addressed the equal protection claim, thus that claim remains pending as well.

### 3. Imposition of Religious Preferences

Plaintiff seeks an order preventing correctional officials from requiring him to share a cell with a Muslim inmate. Plaintiff contends that by assigning him to a cell with a Muslim inmate, Defendant requires him to "participate and support the Muslim religion" in violation of his First Amendment rights. (Compl. at 22.) The Establishment Clause of the First Amendment, made applicable to the states by the Fourteenth Amendment, prohibits the states from forcing anyone to participate in a religion or its exercise. *See Lee v. Weisman*, 505 U.S. 577, 587 (1992).

Plaintiff has not alleged any facts suggesting that he has been forced to participate in the practice of Islam by any state official. Rather, Plaintiff complains of his cellmate's prayer and

religious observances. No state official is alleged to have required Plaintiff to change his religion, prevented him from saying his own prayers, or required him to recite Muslim prayers with his cellmate. Plaintiff claims, as state action in violation of the First Amendment, that prison officials acted in favor of Islam by "forcing [Plaintiff] to double cell with Muslim [sic] and choosing not to assign me or them [sic] to different cells." (Compl. at 25). However, there is not a sufficiently close nexus between the act of placing Plaintiff with a Muslim cellmate and that cellmate's complained–of religious activities to constitute state action in violation of the First Amendment.

Actions of a private entity are attributable to the state only if "there is a sufficiently close nexus between the State and the challenged action," beyond the state's mere approval of or acquiescence to the activity of a private individual. *United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974); *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 547 (1987)). The state must be "responsible for the specific conduct of which the plaintiff complains" by coercing, managing, controlling, encouraging, or participating in the private party's actions. *Id.* at 146–47 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005)). Although forcing Plaintiff to share a cramped cell with someone whose religious practices he virulently opposes may turn out to have some evidentiary bearing on his conditions of confinement claim under the Eighth Amendment, the cell assignment is not participation in or coercion, management, control, or encouragement of the cellmate's Islamic practices. Without any such nexus, prison official's double–celling of Plaintiff with a Muslim cellmate and refusal to reassign him is not state action in violation of his First Amendment rights.

Defendant's motion to dismiss is therefore granted as to First Amendment claims.

IV.     Conclusion

Defendant's Motion to Dismiss [Doc. #15] is GRANTED in part and DENIED in part as discussed above.  The case will proceed on Plaintiff's Eighth Amendment claim of unconstitutional conditions of confinement resulting from double–celling and overcrowded conditions, Plaintiff's retaliatory transfer claim, and Plaintiff's equal protection claim regarding double–celling.  The motion to dismiss is GRANTED as to the remaining claims against Defendant.

IT IS SO ORDERED.


/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of September, 2010.