UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ANDRES R. SOSA, | |
|---|---|
| *Plaintiff*, | Civil No. 3:09cv869 (JBA) |
| *v.* | |
| THERESA C. LANTZ, | |
| *Defendant*. | August 14, 2013 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Andres Sosa, proceeding pro se,[1] brought this action against Defendant Theresa C. Lantz, the former Commissioner of the Connecticut Department of Correction, pursuant to 42 U.S.C. § 1983, alleging multiple violations of his constitutional rights arising from the conditions of his confinement at the MacDougall-Walker Correctional Institution. (*See* Compl. [Doc. # 1].) After the Court's ruling on his motion to dismiss, Plaintiff's only surviving claim is an Eighth Amendment claim of unconstitutional conditions of confinement resulting from alleged prison overcrowding.[2] (*See* Rul. on Def.'s Mot. to Dismiss [Doc. # 30] at 12.) Defendant now moves [Doc. # 64] for summary judgment on Plaintiff's remaining claim, arguing that it fails for lack of personal involvement by Commissioner Lantz, that it is barred by the statute of limitations and failure to exhaust, and that there are no outstanding questions of material fact that would justify permitting this case to proceed to trial. For the following reasons, Defendant's motion for summary judgment is granted.

---

[1] After Defendant filed the pending motion for summary judgment, the Court appointed pro bono counsel to represent Plaintiff in this matter. (*See* Order Appointing Pro Bono Counsel [Doc. # 70].)

[2] At oral argument, Plaintiff's counsel clarified that Plaintiff was no longer pursuing his retaliatory transfer or equal protection claims.

I.  **Background**

Since 1997, Plaintiff has been incarcerated in multiple Connecticut state prisons. (*See* Tabs A & B to Deveau Aff., Ex. A to Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 64-13]; Sosa Dep. Tr., Ex. F to Def.'s 56(a)1 Stmt. at 7.) Plaintiff was imprisoned at the MacDougall-Walker Correctional Institution from May 31, 2001 to December 17, 2002, and from April 22, 2004 to January 21, 2009. (*See* Tab B to Deveau Aff.). During his time at MacDougall-Walker, Plaintiff was housed in a small cell[3] that he shared with another inmate. (*See* Compl. at 8; Sosa Dep. Tr. at 10.) While at MacDougall-Walker, Plaintiff worked as a tierman, a shower cleaner, a painter, an industry assistant, a commissary assistant, a laundry assistant, and a third-shift concourse assistant. (*See* Cronin Aff., Ex. K to Def.'s 56(a)1 Stmt. ¶ 4.)

A.  **Single Cell Status**

In 2002 and 2007, Plaintiff applied for single-cell status, claiming that he suffered from psychological disorders and threatening to kill his cellmate if his request was not granted. (*See* Coleman Aff., Ex. C to Def.'s 56(a)1 Stmt. ¶ 5.) In connection with his 2007 request, Plaintiff was evaluated by Dr. Joseph Coleman, who determined that although Plaintiff "has mental health needs, he did not met the criteria for single cell status set forth in the CMHC Policy and Procedures No. G 4.06." (*Id.*) The Single Cell Status Policy provides that

> single cell status may be recommended for CFOC mental health classification Level 4 or 5 inmates . . . . CMHC mental health staff shall present a referral . . . for an inmate's single cell status based on one or more of the following, documented criteria: The inmate suffers from a

---

[3] Plaintiff claims that his cell was 57 square feet based on his measurement with a ruler (*see* Compl. at 8; Sosa Dep. Tr. at 10), but Defendant contends that there are no cells in MacDougall-Walker that are smaller than 85.82 square feet (*see* Murphy Aff., Ex. G to Def.'s 56(a)1 Stmt. ¶ 5 & Diagram at Tab A).

2

major psychiatric disorder, has a documented history of violence, and is currently a violence risk.

(Single Cell Status Policy, Tab A to Coleman Aff. at 151.)

Plaintiff has previously been diagnosed with major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, attention deficit disorder, attachment disorder and borderline intellectual functioning. (*See* Dec. 6, 2007 Grievance, Attachment to Second Boland Aff., Ex. I to Def.'s 56(a)1 Stmt. at 160). Plaintiff takes Paxil and Depakote for these conditions. (*See* Sosa Dep. Tr. at 6.) Plaintiff also has a record of violent behavior while incarcerated, including citations for fighting and making threats. (*See* Disciplinary History, Attachment to Second Boland Aff. at 164, 178–82.) During his incarceration, Plaintiff has consistently been classified as a mental health level 2 or 3, with the exception of several isolated periods during which he was classified as a mental health level 5. (*See* Guiher Aff., Ex. D to Def.'s 56(a)1 Stmt. ¶¶ 4–5; Medical History, Tab A to Guiher Aff.)

Defendant claims that some inmates at MacDougall-Walker are given single cells or are housed in larger cells than he was assigned to, because they had killed people in jail, or based on mental health and security issues. (*See* Sosa Dep. Tr. at 22–24.)[4] There are only two inmates at MacDougall-Walker with single cell status, and both of those cases were initiated by custody. (*See* Coleman Aff. ¶ 7.) There have been no mental health

---

[4] Plaintiff claims based on his personal knowledge that inmates are paired together in cells without regard to psychological problems, the crimes they committed, or gang affiliations. (*See* Sosa Dep. Tr. at 11–13.) However, Defendant claims that inmates are housed based on classification procedures based on security risk, gang affiliation, and mental health needs, and that MacDougall-Walker follows these classification procedures. (*See* Murphy Aff. ¶ 8.)

3

referrals for single cell status, but between six and eight inmates have initiated requests for single cells. (*See id.*)

On December 6, 2007, Plaintiff filed an administrative grievance claiming that he had been wrongfully denied single cell status. (*See* Dec. 6, 2007 Grievance.) On December 21, 2007, Warden Peter Murphy denied the grievance, finding that Dr. Coleman had correctly determined that Plaintiff was ineligible for single cell status. (*See id.* at 157.) Plaintiff appealed Warden Murphy's decision, and his appeal was denied on January 4, 2008. (*See id.* at 167.) The denial of Plaintiff's appeal indicated that he had exhausted his administrative remedies and could make no further appeal. (*See id.*)

**B.      Overcrowding at MacDougall-Walker**

In 2003, MacDougall-Walker underwent a 600-bed expansion by adding a new wing to the MacDougall Building. (*See* Murphy Aff. ¶ 4.) Both before and after the expansion, MacDougall-Walker was audited by the American Correctional Association Commission on Accreditation for Corrections. (*See id.* ¶¶ 6–7.) The audit assessed the conditions of the facility, including food services, medical care, and offender work programs and educational services. (*See id.* ¶ 6.) MacDougall-Walker received high scores in these categories in each of the audits. (*See id.* ¶¶ 6–7.)

Plaintiff claims that the expansion of the MacDougall-Walker facility resulted in overcrowding of the prison. (*See* Compl. at 15–19.) Specifically, Plaintiff claims that the feeding facilities were overtaxed such that inmates receive less than the required daily caloric allotment, basic medical services are unavailable, job and education opportunities have diminished, and that there is an increased culture of lawlessness due to the lack of a commensurate increase in staffing levels to service the larger inmate population. (*See id.*; Sosa Dep. Tr. at 14–18.)

4

On October 13, 2008, Plaintiff sent a letter to Commissioner Lantz complaining of prison overcrowding and the lack of rehabilitation programs and job opportunities at MacDougall-Walker. (*See* Oct. 13, 2008 Letter, Tab F to Lantz. Aff., Ex. G to Def.'s 56(a)1 Stmt. at 121–22.) This letter was forwarded to Deputy Commissioner Brian Murphy, who responded to Plaintiff on October 16, 2008, acknowledging receipt of the letter. (*See* Oct. 16, 2008 Letter, Tab F. to Lantz Aff. at 120; Lantz Aff. ¶ 6.) On November 15, 2008, Plaintiff filed an administrative grievance regarding the lack of rehabilitation programs and prison job opportunities. (*See* Nov. 15, 2008 Grievance, Attachment to Sec. Boland Aff. at 171.) In the grievance, Plaintiff complained that the inmates with lower security classifications were occupying all of the high-paying jobs. (*Id.*) Plaintiff also stated that the facility did not offer enough rehabilitation programs, and complained specifically that MacDougall-Walker did not offer the "Voices" or "Thinking for Change" programs. (*Id.*) On December 15, 2008, this grievance was denied. (*See id.* at 172.) Defendant appealed the denial on December 17, 2008, and his appeal was denied as moot on February 6, 2009 based on his transfer out of the MacDougall-Walker facility. (*See* Compl. at 37; *see also* Dec. 17, 2008 Inmate Grievance Appeal Form, Attachment to Compl.) The denial of Plaintiff's appeal indicated that he had exhausted his administrative remedies and could make no further appeal. (*See* Dec. 17, 2008 Inmate Grievance Appeal Form.)

C. **Plaintiff's Transfer**

On January 8, 2009, Plaintiff requested a transfer out of MacDougall-Walker, stating "I want you to get me out of this facility [because] there is always some B.S. going on plus you're disrespectful toward me." (January 8, 2009 Inmate Request Form, Ex. B to Def.'s 56(a)1 Stmt. at 206; *see also* Sosa Dep. Tr. at 25.) On January 9, 2009, Warden Murphy sent the transfer request to Deputy Warden Boyle. (*See id.*) On January 21,

5

2009, Plaintiff was transferred to Garner Correctional Institution in Newtown, Connecticut. (*See* Tab A to Deveau Aff.)

## II. Discussion[5]

Defendant argues that she is entitled to summary judgment on Plaintiff's Eighth Amendment claim because (1) she had no personal involvement in creating any of the conditions of which Plaintiff complains; (2) the majority of Plaintiff's allegations are barred by the statute of limitations for § 1983 actions; (3) Plaintiff failed to exhaust his administrative remedies with respect to the conditions of which he complains; and (4) there is no outstanding question of material fact that would foreclose the granting of summary judgment.

### A. Personal Involvement

Defendant argues that she is entitled to summary judgment because Plaintiff has not offered sufficient evidence to show that she was personally involved in the alleged violations of Plaintiff's rights. "[I]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an

---

[5] "Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

award of damages under § 1983." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). The Second Circuit has explained that

> personal involvement may be shown in one or more of the following ways: (1) the defendant participated directly in the alleged violation; (2) the defendant, after being informed of the violation through a report or appeal failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or; (5) the defendant exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating the unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[6]

Plaintiff appears to argue that Commissioner Lantz exhibited deliberate indifference or gross negligence in ignoring the violation of Plaintiff's rights when she was put on constructive notice of the alleged violations. *See Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) ("[S]upervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act.") As evidence of Commissioner Lantz's constructive notice of his complaints, Plaintiff points to his October 13, 2008 letter to Commissioner Lantz, in which he complained about overcrowding at MacDougall-Walker. (*See* Oct. 13, 2008 Letter at 121–22.) Furthermore, Plaintiff

---

[6] There is disagreement in this Circuit as to whether methods two, four, and five remain viable. However, the Second Circuit has yet to decide the issue. *See Grenier v. City of West Haven*, No. 3:11cv808 (JBA), 2012 WL 4092587, at *5 (D. Conn. Sept. 17, 2012) (collecting cases and discussing split of authority).

7

claimed in his deposition that Commissioner Lantz had a policy of reviewing one inmate grievance or grievance appeal from each inmate each year. (*See* Sosa Dep. Tr. at 20.) Commissioner Lantz flatly denies that she ever had such a policy or that she ever followed such a practice, and claims to have no personal recollection of any issues involving Plaintiff. (*See* Lantz. Aff. ¶ 3, 5.) Furthermore, the directive Plaintiff cited as the basis for his knowledge of this policy makes absolutely no mention of such a policy. (*See* Exs. 1 & 2 to Def.'s Reply [Doc. # 84].)

As this Court recognized in ruling on Defendant's motion to dismiss, "a supervisory official's referral of a prisoner's letter of protest to other officials for response does not establish that supervisory official's requisite personal involvement." (*See* Rul. on Def.'s Mot. to Dismiss at 8 (quoting *Brooks v. Chappius*, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006)).) Thus, evidence that Plaintiff sent a letter to Commissioner Lantz complaining about the conditions of his incarceration, which she then forwarded to the Deputy Commissioner for response is insufficient by itself to establish her personal involvement in the alleged violations.

Plaintiff's only other evidence of Defendant's personal involvement—.i.e., that she had a policy of reviewing one grievance from each inmate every year—is directly contradicted by Directive 9.6 and Commissioner Lantz's affidavit, and is unsupported by any evidence in the record except for Plaintiff's bald assertions. Thus, Defendant argues, the Court need not credit this evidence. *See Distiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2011) ("A court cannot credit a plaintiff's merely speculative or conclusory assertions.

8

Further, where a party relies on . . . deposition testimony to establish facts, the statements must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." (internal citations and quotation marks omitted)). Plaintiff cites no basis for his personal knowledge of the Commissioner's policy, other than Directive 9.6, which in fact makes no mention of such a policy. Even in light of Plaintiff's statement in his deposition, this conclusory claim, lacking any basis in personal knowledge, is not sufficient to establish a question of material fact as to Defendant's personal involvement in the alleged violations.

However, Plaintiff need not show Defendant's personal involvement in order to seek prospective injunctive relief in this suit. *See Malik v. Tanner*, 697 F. Supp. 1294, 1304 (S.D.N.Y. 1988) ("A claim for injunctive relief, as opposed to monetary relief, may be made on a theory of *respondeat superior* in a § 1983 action." (citing *Ganguly v. New York State Dep't of Mental Hygiene*, 511 F. Supp. 420, 424 (S.D.N.Y. 1981))); *but see McCray v. Coughlin*, No. 84 Civ. 2747 (RWS), 1984 WL 842, at *2 (S.D.N.Y. Sept. 7, 1984) ("Equitable relief under 42 U.S.C. § 1983 can only be granted against supervisory officials who have been personally involved in the acts complained of."). Thus, Defendant's motion for summary judgment is granted with respect to Plaintiff's claim for monetary damages, and the Court will evaluate the merits of his claim for injunctive relief.

B.     **Statute of Limitations**

"In Connecticut, a plaintiff must bring his § 1983 claim within three years of the date his claim accrues." *Barile v. City of Hartford*, 264 F. App'x 91, 91 (2d Cir. 2008)

(citing *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994)). Defendant argues that Plaintiff is therefore barred from bringing any claims that accrued prior to June 2, 2006,[7] and that because he lived in only MacDougall-Walker and Garner between June 2, 2006 and June 2, 2009, his claims relating to any other Department of Correction facility in which he was housed are time-barred. However, as was confirmed at oral argument, Plaintiff does not raise claims regarding any facility other than MacDougall-Walker, and Plaintiff's claims relating to the conditions at MacDougall-Walker between June 2, 2006 and June 2, 2009 are not time-barred. Defendant's motion for summary judgment on this ground is therefore denied.

C. **Prison Litigation Reform Act**

Defendant argues that the majority of Plaintiff's allegations relating to his Eighth Amendment claim are barred under the Prison Litigation Reform Act ("PLRA") for failure to exhaust administrative remedies. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As the basis for his Eighth Amendment claim, Plaintiff complains of overcrowding at MacDougall-Walker, citing the following conditions: (1) the denial of single cell status; (2) the small size of his cell; (3) the lack of sufficient staff to address the increased size of the prison population, which results in increased violence; (4) the reduced quality of food service, such that prisoners receive less than the required daily caloric intake; (5) the lack of access to basic medical services, such as over-the-counter medications; and (6) insufficient rehabilitation programs and job opportunities.

---

[7] This action was filed on June 2, 2009. (*See* Compl.)

Defendant does not appear to dispute that Plaintiff filed grievances regarding the denial of single cell status and insufficient rehabilitation and employment opportunities, and that he appealed those grievances such that he exhausted his administrative remedies on those claims. However, Defendant argues that because Plaintiff failed to grieve any of the other conditions of which he now complains, the Court is barred from considering those conditions when evaluating his Eighth Amendment claim. As a preliminary matter, in his grievance regarding the denial of single cell status, Plaintiff stated that "I feel I need more space[;] the cell is to[o] small for two." (*See* Dec. 12, 2007 Grievance at 160.) Thus, based on this grievance, Plaintiff has also exhausted his administrative remedies regarding the size of his cell.

As the Second Circuit has explained:

> The PLRA's exhaustion requirement is designed to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it. Thus . . . if prison regulations do not prescribe any particular content for inmate grievances, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.
>
> We believe that this formulation is a sound one. Uncounselled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading. Still, the PLRA's exhaustion requirement does require that prison officials be afforded time and opportunity to address complaints internally. In order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.

*Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (internal quotation marks and citations omitted), *distinguished on other grounds by Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007).

Plaintiff does not dispute that he did not file grievances specifically addressing the lack of adequate nutritional and medical services and the potential for increased violence due to insufficient staffing at the facility.[8] Rather, Plaintiff argues that his two properly exhausted grievances, combined with his October 13, 2008 letter to Commissioner Lantz were sufficient to put Defendant on substantive notice of his complaints. Other courts in this Circuit have recognized that an informal complaint lodged via letter to a prison official is not sufficient by itself to satisfy the procedural requirements of exhaustion. *See Connor v. Hurley*, No. 00 Civ. 8354 (LTS) (AJP), 2004 WL 885828, at *2 (S.D.N.Y. Apr. 26, 2004) ("Furthermore, Connor's letters to Superintendent Artuz and to Commissioner Goord may not be deemed substitutes for strict compliance with the requirements of the [prison grievance procedure].") However, even if the Court were to consider Plaintiff's letter as a substantive supplement to his prior grievances, the content of the October 13, 2008 letter makes no mention of inadequate staffing levels resulting in violence, or of insufficient nutrition or medical services due to overcrowding. (*See* Oct. 13, 2008 Letter at 121–22.) Plaintiff's letter to Commissioner Lantz, while mentioning the word overcrowding, focuses exclusively of the effect of overcrowding on inmate access to jobs and rehabilitation programs. (*See id.*) Thus, even when the letter is considered, there is nothing that would have put Defendant on notice of the conditions of which Plaintiff now complains such that she could have taken appropriate action to remedy the situation.

---

[8] Plaintiff also does not argue that there are special circumstances in this case under which the exhaustion requirement should not apply.

Therefore, the Court finds that Plaintiff's complaints regarding insufficient staff, food, and medicine have not been exhausted, and will not consider those allegations when reviewing Plaintiff's Eighth Amendment claim.

Defendant also argues that because she was not named or implicated in Plaintiff's grievances these claims have not been administratively exhausted with respect to her. (*See* Def.'s Reply [Doc. # 84] at 9.) In *Collins v. Goord*, 438 F. Supp. 2d 399 (S.D.N.Y. 2006), for example, the district court reasoned that "the mere fact that [the] plaintiff filed *some* grievance, and fully appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance." *Id.* at 412–13 (emphasis in original) (quoting *Turner v. Goord*, 376 F. Supp. 2d 321, 325 (W.D.N.Y. 2005)). In *Collins*, the plaintiff had filed a grievance claiming that the law library staff at the facility where he was incarcerated failed to provide him copies of legal documents. The district court reasoned that because the grievance did not "name or even allude generally" to several defendants, including the commissioner of the department of corrections, and only suggested a discrete dispute between the inmate and the law library staff, the plaintiff had failed to exhaust his administrative remedies with respect to those defendants not named in the grievance. *Id.* at 413.

Here, Plaintiff filed two grievances, one regarding the denial of single cell status, and one regarding the lack of adequate employment opportunities and rehabilitation programs at MacDougall-Walker. Defendant does not name Commissioner Lantz in either grievance. While Plaintiff's grievance regarding the denial of single cell status does mention Dr. Coleman and several correctional officers, it focuses mainly on what Plaintiff perceives as Dr. Coleman's failure to properly assess his mental health needs, and the

custody department's failure to assess his qualifications for single cell status. (*See* Dec. 6, 2007 Grievance.) Nothing in these allegations implicates Commissioner Lantz's involvement in the incident. Rather, similar to *Collins*, the grievance suggests a discrete dispute between Plaintiff and several members of the prison staff. However, Plaintiff's grievance regarding the lack of adequate employment and rehabilitation opportunities at MacDougall-Walker involves the conditions of a correctional facility and the implementation of the Department of Correction's programs at that facility. Such a complaint goes beyond a discrete dispute between an inmate and prison officials, and implicates the direction of the Department of Correction under Commissioner Lantz. Therefore, Defendant's motion for summary judgment on this ground is denied, with the caveat that the Court may not consider Plaintiff's claims of insufficient staff, lack of medical services, and improper nutrition due to overcrowding.

**D.     Eighth Amendment Claim**

Defendant argues that she is entitled to summary judgment on Defendant's remaining Eighth Amendment claims because Plaintiff has failed to establish the existence of a question of material fact as to the unconstitutionality of the conditions under which he was confined.

"To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal citations and quotation marks omitted). Defendant argues

that Plaintiff has not put forth sufficient evidence such that a reasonable jury could conclude that either prong of this test has been met.

As the Second Circuit has explained:

> To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health. Thus, prison officials violate the Constitution when they deprive an inmate of his basic human need such as food, clothing, medical care, and safe and sanitary living conditions. There is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency. Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.

*Id.* (internal citations and quotation marks omitted). "To meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence." *Id.* (internal citations and quotation marks omitted). "To constitute deliberate indifference, the prison official must know of, and disregard an excessive risk to inmate health or safety. Evidence that a risk was obvious or otherwise might have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Id.* (internal citations and quotation marks omitted).

The gravamen of Plaintiff's Eighth Amendment claim is that his placement in a small cell with another inmate, in combination with his lack of access to desirable education, rehabilitation, and employment programs has caused a deterioration in his already fragile mental health. The Court recognizes that there is case law suggesting that an inmate has no constitutional right to a particular vocational or rehabilitation program. *See Doe v. Goord*, No. 04 Civ. 570 (GBD)(AJP), 2005 WL 3116413, at *15 (S.D.N.Y. Nov. 22, 2005) ("We are unaware of any authority for the proposition that a prison inmate has

a federal constitutional right to rehabilitation. Indeed all indications appear to be to the contrary . . . "); *Giano v. Cuomo*, No. 94-CV-809, 1998 WL 760262, at *6 (N.D.N.Y. Oct. 28, 1998) ("The lack of specialized educational and rehabilitative programs particularized to plaintiff's needs do not give rise to a deprivation of his Eighth Amendment rights. First, Plaintiff has no protected property interest in these programs. Second, denial of such programs falls far short of the egregious type of conduct needed to establish an Eighth Amendment claim." (internal citations and quotation marks omitted)). *Cf. Santiago v. Comm'r of Correction*, 39 Conn. App. 674, 680 (1995) ("A prisoner has no property or liberty interest in prison employment, increased recreation or education courses.").

However, the Court is also aware that even the United States Government has now called into question the policy of warehousing vast swaths of the population in prisons over the long course of ever-increasing sentences. *See, e.g.*, Eric Holder, Attorney General, Address to the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013), http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html ("And with an outsized, unnecessarily large prison population, we need to ensure that incarceration is used to punish, deter, and rehabilitate—not merely to warehouse and forget"); Letter from Jonathan J. Wroblewski, Director of the Office of Policy and Legislation for the Dep't of Justice to the Hon. Patti B. Saris, Chair of the U.S. Sentencing Comm'n (July 11, 2013), http://www.justice.gov/criminal/foia/docs/2013annual-letter-final-071113.pdf (advocating reforms to federal sentencing in light of the documented impact on individuals and communities of mass incarceration rates and the "explosion in the number of people returning to the community each year from stints in prison"). Thus, the Court recognizes the possibility that, anticipating

evolving contemporary standards of decency, an extended term of confinement in a cramped and crowded cell without any opportunity whatsoever for an inmate to advance himself through education, vocational, or rehabilitative programs might come to be viewed as unconstitutional cruel and unusual punishment.

Nonetheless, the record before the Court here does not arise to the level of the hypothetical case outlined above. Plaintiff does not allege that he has been denied all employment opportunities and the record reflects that he has actually had a variety of jobs during his incarceration. (*See* Cronin Aff. ¶ 4.) Furthermore, Plaintiff only alleges that certain specific programs were not offered at MacDougall-Walker, not that he was denied all opportunities for personal advancement. Even if the Court accepted all of the allegations in Plaintiff's deposition as true—i.e., that overcrowding at MacDougall-Walker led to Plaintiff's occupying a double cell of 57 square feet, and to his reduced access to rehabilitation programs and job opportunities—they would be insufficient as a matter of law to satisfy the objective element of his Eighth Amendment claim.

In *Rhodes v. Chapman*, 452 U.S. 337 (1981), the Supreme Court considered similar claims by an inmate and concluded that such conditions did not amount to a constitutional violation. In *Rhodes*, the district court had found that overcrowding caused by double celling in 63 square foot cells and a subsequent failure to increase staff at a prison facility had led to a reduction in employment opportunities and isolated incidents of failure to provide medical and dental care, but had not led to increased violence, unsanitary conditions in cells, or lack of adequate nutrition. *Id.* at 342–43. Based on these findings of fact, the Supreme Court reasoned that the

> conclusion that double celling . . . constitutes cruel and unusual punishment is insupportable. . . . The double celling . . . did not lead to deprivations of essential food, medical care, or sanitation. Nor did it

> increase violence among inmates or create other conditions intolerable for prison confinement. Although job and educational opportunities diminished marginally as a result of double celling, limited work hours and delay before receiving education do not inflict pain, much less unnecessary and wanton pain; deprivations of this kind simply are not punishments.

*Id.* at 347–48. Here, based on Plaintiff's exhausted allegations,[9] Plaintiff has shown only that he was in a cell of a similar size to the plaintiff in *Rhodes*, and that similar to the plaintiff in *Rhodes*, he had decreased access to his preferred employment and rehabilitation opportunities. As the Supreme Court reasoned in *Rhodes*, such deprivation does not inflict "unnecessary and wanton pain" such that it violates the Eighth Amendment. *See also Jones v. Goord*, 435 F. Supp. 2d 221 (S.D.N.Y. 2006) (finding that double celling in 55-square foot cells did not violate the Eighth Amendment).

Furthermore, even if the Court were to consider Plaintiff's unexhausted claims and find that there was sufficient evidence to establish a question of material fact as to the objective element of his Eighth Amendment claim, Defendant argues that Plaintiff has not offered any evidence based on which a jury could find that Defendant was deliberately indifferent to the unconstitutional conditions at MacDougall-Walker. As discussed above, Plaintiff has not put forth any evidence to show that Commissioner Lantz was aware of his grievances regarding the conditions at MacDougall-Walker, and she has in fact specifically denied knowledge of any of his complaints. (*See* Lantz Aff. ¶¶ 3, 5.) Nor has Plaintiff offered any evidence that Defendant was otherwise made aware

---

[9] The reasoning in *Rhodes* implies that if Plaintiff had exhausted claims regarding insufficient nutrition, lack of access to medical care, and increased violence such that the Court could consider them, documentation or evidence supporting Plaintiff's description of the conditions at MacDougall-Walker could arise to an Eighth Amendment violation, creating questions of material fact as to the veracity of his description and precluding summary judgment on this issue.

of the conditions of which he complained. Thus, Plaintiff has not put forth sufficient evidence to establish the second element of his Eighth Amendment claim, and therefore the Court grants Defendant's motion for summary judgment.

## III.     Conclusion

For the foregoing reasons, Defendant's Motion [Doc. # 64] for Summary Judgment is GRANTED. The clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of August, 2013.
